Argued and submitted February 4, reversed and remanded for determination of assessment as to employee Blanchard; otherwise affirmed October 23, 1991

POWER MASTER, INC.,
*Respondent,*

*v.*

The filings of the
NATIONAL COUNCIL ON
COMPENSATION INSURANCE
and the Oregon Council on Compensation Insurance,
*Respondents,*

*and*

SAIF CORPORATION,
*Petitioner.*

(88-02-14; CA A62510)

820 P2d 459

David L. Runner, Assistant Attorney General, argued the cause for petitioner. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

David J. Sweeney, Portland, argued the cause for respondent Power Master, Inc. On the brief were Raymond M. Rask, Paul G. Dodds, Suzanne C. Ritter, Certified Law Student, and Brownstein, Rask, Sweeney, Kerr, Grim & DeSylvia, Portland.

No appearance for respondents National Council on Compensation Insurance and the Oregon Council on Compensation Insurance.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

---

* Joseph, C. J., *vice* Newman, J., retired.

DEITS, J.

**DEITS, J.**

This is a workers' compensation premium audit proceeding. SAIF seeks reversal of the part of the order of the Department of Insurance and Finance (DIF) that relieved Power Master, Inc. (PMI), of any premium obligation for its former Portland branch employees as of September 1, 1986. We reverse in part and otherwise affirm.

PMI is a corporation principally engaged in the business of industrial cleaning and maintenance. It is incorporated in Oregon, with its main office in Portland and branch offices in five other states. On September 1, 1986, PMI permanently moved its only Oregon branch office to Vancouver, Washington. The purpose of the move was to obtain better facilities in a safer location; to gain economic advantages such as lower costs, proximity to potential work sites and lower workers' compensation rates; and to further its increasing emphasis on Washington job opportunities.

Each PMI branch office maintains autonomy over its operations and employees. The Vancouver branch keeps its own employee records and is responsible for personnel management. The branch manager supervises the hiring and firing of employees, issuance of paychecks, training of employees, administration of grievances and assignment of employees to work sites. Generally, employees working outside Washington report directly to their work site except when they need tools or other equipment from the branch. PMI presented evidence that, since the move to Vancouver, most of the branch's work involved repeat industrial and commercial cleaning jobs and that the majority of those were in Washington. The branch also had two major asbestos removal jobs in Oregon and a few smaller asbestos jobs in Idaho and Washington. The evidence did not include a detailed breakdown of employee work hours in each state where work was done. On September 1, 1986, PMI stopped paying Oregon workers' compensation premiums for its former Portland branch employees and began paying premiums to the State of Washington.

In November, 1987, SAIF retroactively assessed PMI an additional premium of approximately $175,000, for the period of September 1, 1986, to March 31, 1987, on the

basis of SAIF's conclusion that PMI's former Portland branch employees were Oregon workers rather than Washington workers. PMI appealed the assessment to DIF, which concluded that the employees were permanent Washington workers for workers' compensation purposes. It explained:

> "The basic test to determine jurisdictional situs of an employee, for workers' compensation purposes is the permanency of the employment relation. *Kolar v. B & C Contractors,* 36 Or App 65, 583 P2d 562 (1978). This permanency test appears to look at both the intent of the employer and the understanding of the employee to determine the situs of the employement [sic] relationship. The Court of Appeals looks to the employment relationship itself as opposed to the temporal place of a given job to determine jurisdiction."

SAIF assigns error to DIF's conclusion that the former Portland branch employees were not Oregon workers. With one exception, we agree with DIF's conclusion. Subject workers are defined under Oregon law as "[a]ll workers," with certain exceptions not pertinent to this case. ORS 656.005(25); ORS 656.027. Subject workers who temporarily work outside Oregon remain entitled to benefits under Oregon's Workers' Compensation Law. ORS 656.126(1). Out-of-state workers and their employers are exempt from Oregon's Workers' Compensation Law when they are temporarily working in Oregon, provided that certain requirements for coverage in another state are met. ORS 656.126(2).

■     SAIF first contends that, in applying the permanent employment relation test, DIF applied the wrong test for deciding if the workers in question were Oregon or Washington subject workers. It argues that, under an agreement between Oregon and Washington regarding jurisdiction for workers' compensation, executed pursuant to ORS 656.126(5),[1] DIF is only required to consider the location of

---

[1] ORS 656.126(5) provides:

"The director shall have authority to enter into agreements with the workers' compensation agencies of other states relating to conflicts of jurisdiction where the contract of employment is in one state and the injuries are received in the other state, or where there is a dispute as to the boundaries or jurisdiction of the states and when such agreements have been executed and made public by the respective state agencies, the rights of workers hired in such other state and injured while temporarily in Oregon, or hired in Oregon and injured while temporarily in another state, or where the jurisdiction is otherwise uncertain, shall be determined pursuant to such agreements and confined to the

the employee's work. According to that agreement,

> "a Washington workman is a person *hired to work* in the State of Washington, and an Oregon workman is a person *hired to work* in Oregon." *Agreement Between the Department of Labor and Industries of the State of Washington and the Workmen's Compensation Board of the State of Oregon Regarding Extraterritorial Reciprocity,* February 4, 1966." (Emphasis supplied.)

However, there is no indication in the language of ORS 656.126, or in the case law interpreting the statute, that the interstate agreement was intended to change the test for determining a worker's principal place of employment. Rather, the purpose of the interstate agreement appears to be to protect employers from having to pay dual premiums and to protect workers by ensuring that an on-the-job injury or disease is compensable in at least one state.

SAIF's principal authority for its contention that the interstate agreement changed the test is *House v. State Industrial Accident Commission,* 167 Or 257, 268, 177 P2d 611 (1941). The Supreme Court construed the expression "employed to work in this state" in OCLA § 102-1731,[2] the precursor of ORS 656.126(1),[3] to mean the "location of the [worker's] work" rather than the location of the "employment relation." *House* is not controlling. It did not directly concern the language at issue here. The cases decided since the interstate agreement was executed have consistently applied the "permanent employee relation test" articulated in *Kolar v. B & C Contractors, supra,* 36 Or App at 70. *See*

---

jurisdiction provided in such agreements."

[2] That statute, OCLA § 102-1731, provided:

"If a workman *employed to work in this state* and subject to this act temporarily leaves the state incidental to such employment and receives an accidental injury arising out of and in the course of his employment, he shall be entitled to the benefits of this act as though he were injured within this state * * *." (Emphasis supplied.)

[3] ORS 656.126(1) provides:

"If a worker *employed in this state* and subject to ORS 656.001 to 656.794 temporarily leaves the state incidental to that employment and receives an accidental injury arising out of and in the course of employment, the worker, or beneficiaries of the worker if the injury results in death, is entitled to the benefits of ORS 656.001 to 656.794 as though the worker were injured within this state." (Emphasis supplied.)

*Power Master, Inc. v. Blanchard,* 103 Or App 467, 471, 798 P2d 691 (1990); *Phelan v. H.S.C. Logging, Inc.,* 84 Or App 632, 735 P2d 22, *rev den* 303 Or 590 (1987).

■ SAIF also argues that, even if the permanent employment relation test applies, DIF did not apply it correctly. SAIF lists certain factors that it contends must be addressed in applying the permanent employment relation test and argues that DIF is required to make specific findings on each factor. It also asserts that a determination of the location of the work sites is essential. However, finding that the employees were transient and worked out of many locations, DIF decided that it was inappropriate "to simply look at the sequence of temporary assignments." Instead, it focused on other factors, such as the location of various supervisory and administrative activities as well as the intent of the parties, to determine the permanency of the employment relation.

■ There was evidence that PMI supervised and controlled the employees out of the Vancouver office. It hired, fired and trained employees and administered grievances there. It also assigned work sites and distributed equipment and supplies from that office. Unless it was inconvenient, the employees reported there daily and to receive their paychecks. There was evidence that most of the jobs were in Washington. DIF's order stated that "[a]ll parties, both employees and employer, who testified, stated that the Vancouver branch office was the new location of their job-employer as of September 1, 1986." Although many of the workers were hired in Oregon, that is not controlling. As we have held,

> "that [an employee] was hired in Oregon, drove out of this state on his way to Virginia, and continues to believe he is Oregon-based does not establish that he was permanently in Oregon." *Jackson v. Tillamook Growers Co-Op,* 39 Or App 247, 250, 592 P2d 235 (1979).

Neither does the location of the corporate headquarters control. Even though company-wide policy may have been formulated in Portland, the branches had administrative and supervisory control of their employees. We conclude that DIF applied the appropriate factors and that its findings are supported by substantial evidence. It was not necessary, as

SAIF asserts, that DIF make detailed findings on each factor that it considered.

■	SAIF also argues that our decision in *Power Master, Inc. v. Blanchard, supra,* precludes reconsideration of the status of a former Portland branch employee in this case. We held that Blanchard was a subject Oregon worker when he was injured in November, 1986. Under the doctrine of issue preclusion, future litigation is precluded between the parties on any issue of fact or law that was actually litigated and determined in a setting where its determination was essential to the final decision reached. *Drews v. EBI Companies,* 310 Or 134, 139, 795 P2d 531 (1990).

SAIF and PMI were parties to the litigation in both cases. The critical question is whether any issue of fact or law essential to the first decision also arose in the second. In *Blanchard,* the issue was "whether claimant is a 'worker employed in this state' within the meaning of ORS 656.126(1) or is, instead, an out-of-state employee who is not covered by the Oregon Workers' Compensation Law." 103 Or App at 469. The record in that case showed that claimant had worked out of the Portland office and only on Oregon jobs until the move on September 1. After the move, he reported to the Vancouver office each morning and afternoon but continued to work on Oregon jobs. In October, he began working in Idaho, where he was injured in November. The Board order set aside the denial of the Oregon claim. We affirmed, holding that "the move of the office had no significant effect on claimant's job. * * * Claimant remained an Oregon employee for purposes of ORS 656.126(1)." 103 Or App at 472.

■	We conclude that Blanchard's status as of the time of his November, 1986, injury was decided in *Power Master, Inc. v. Blanchard, supra.* DIF, therefore, was precluded from making a different determination regarding him for the same period.

SAIF asserts that *Blanchard*

"provides the best legal authority imaginable for the conclusion that Mr. Blanchard and all other similarly situated workers continued to be Oregon workers after the branch relocation."

We do not agree that that conclusion automatically follows. The decision and record in *Blanchard* involved only the status of *one* claimant at the time of an injury that occurred less than three months after PMI changed the location of its branch office. The decision and record in this case involves *all* former Portland branch employees for a six-month period. In summary, we conclude that, except for the precluded issue concerning Blanchard, there were no errors of law and there was substantial evidence to support DIF's findings.

Reversed and remanded for determination of assessment as to employee Blanchard; otherwise affirmed.