Argued and submitted December 8, 1995, affirmed July 3, 1996

In the Matter of the Compensation of
Todd E. Moe, DCD, Claimant.

SAIF CORPORATION,
*Petitioner,*

*v.*

Brenda MOE,
Beneficiary of Todd E. Moe, Deceased,
and Jet Logging, Inc.,
*Respondents.*

(92-15393; CA A85828

919 P2d 533

Michael O. Whitty, Special Assistant Attorney General, argued the cause for petitioner. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

David C. Force argued the cause and filed the brief for respondent Brenda Moe, Beneficiary of Todd E. Moe, Deceased.

Robert J. Thorbeck filed the brief for respondent Jet Logging, Inc.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

SAIF seeks review of an order of the Workers' Compensation Board (board) holding that decedent was a subject Oregon worker at the time he sustained a fatal injury in Montana and that his widow was therefore entitled to survivor benefits. ORS 656.126(1). We affirm.

Decedent was killed in a logging accident while working for Jet Logging, Inc. (employer) in Montana on September 2, 1992. Employer is a small, family-owned Oregon logging company that hired decedent in 1989. Employer had a contract to perform work in Oregon until March 1992, when the Oregon company with which employer had contracted could no longer guarantee employer sufficient work. At that time employer accepted a logging contract in Montana. On March 16, employer told SAIF that it was taking its employees temporarily to Montana, and requested an "Extraterritorial Certificate of Insurance," which SAIF issued March 18, 1992. Employer submitted that certificate to the Montana Employment Relations Division, which approved coverage through October 3, 1992. While in Montana, employer submitted payroll reports to SAIF and continued to pay premiums to SAIF through September 30, 1992. Employer paid no payroll taxes in either Oregon or Montana.

Employer moved a large portion of its logging equipment to Montana but left other equipment in Oregon. Employer had opened a checking account in Montana in 1991, when its owners had purchased Montana acreage known as the Dry Creek Property, which was not connected to the Montana logging job. Employer used the Montana account to pay its employees and meet expenses for that job, but it continued to maintain an Oregon bank account after March 1992. It also kept an Oregon accountant and lawyer and maintained a business address, telephone number, auto insurance and supplier accounts in Oregon.

Before the move, decedent had separated from his wife, moved in with his mother and closed his Oregon bank account. In March, he went to Montana with employer and lived in a trailer parked near the rental housing occupied by

employer's owners, other employees and their family members. Decedent registered his vehicle in Montana but retained his Oregon driver's license and automobile insurance. In April, he began receiving paychecks from employer for the Montana work.

In August 1992, employer negotiated with a Wyoming company to do logging work in Wyoming. On August 24, those negotiations fell through and employer signed a contract with another Montana company to perform work in Montana from August 24 to October 30, 1992. On September 1, the night before his death, decedent wrote to his girlfriend, who resided in Brownsville, Oregon. His letter stated:

> "[I]f I don't get a raise here pretty soon, I might just move there with you, and find a better job. * * * They have been promising me and Greg raises for 6 months and we haven't seen any more money. But even if they don't[,] I will probably stay anyways. Unless you do decide to move up here and after a few months or years we don't like it we can move."

Decedent was killed the next day. In November 1992, a son of employer's president was also killed in a logging accident. Because of the son's death, the president testified, employer decided to stay in Montana.

■　　　Decedent's widow filed a claim for survivor's benefits in Oregon. SAIF denied the claim, and a referee affirmed. The board reversed, reasoning that both employer and decedent had intended to remain in Montana only temporarily at the time of decedent's death. SAIF seeks review from that order. We review for errors of law and substantial evidence.[1] ORS 183.482(8)(a), (c); *Berkey v. Dept. of Ins. and Finance*, 129 Or App 494, 498, 879 P2d 240 (1994); *Power Master, Inc. v. National Council on Comp. Ins.*, 109 Or App 296, 301, 820 P2d 459 (1991) (*Power Master II*).

---

[1] Substantial evidence supports a finding when the record, viewed as a whole, permits a reasonable person to make that finding. ORS 183.482(8)(c). A court must consider "all the evidence in the record." *Garcia v. Boise Cascade Corp.*, 309 Or 292, 295, 787 P2d 884 (1990).

■ Whether workers injured out of state are entitled to benefits under Oregon's Workers' Compensation system is governed by ORS 656.126, which provides, in part:

"(1) If a worker employed in this state and subject to this chapter temporarily leaves the state incidental to that employment and receives an accidental injury arising out of and in the course of employment, the worker, or beneficiaries of the worker if the injury results in death, is entitled to the benefits of this chapter as though the worker were injured within this state."

Under that section, "subject workers" (*i.e.*, workers subject to ORS chapter 656) who work outside Oregon generally continue to be covered by this state's workers' compensation system if Oregon is the place of their permanent employment and if their presence out of state is "incidental"[2] to that employment. *Berkey*, 129 Or App at 498; *Northwest Greentree, Inc. v. Cervantes-Ochoa*, 113 Or App 186, 188, 830 P2d 627 (1992); *Power Master II*, 109 Or App at 299. "Subject workers" include all workers who work in Oregon, with certain exceptions not relevant here. ORS 656.005(28); ORS 656.027; *Northwest Greentree*, 113 Or App at 188; *Power Master II*, 109 Or App at 299.

■ SAIF argues that decedent was not a "subject worker" because, at the time of decedent's death, employer had moved to Montana and there was no more Oregon employment. SAIF relies on *Hobson v. Ore Dressing, Inc.*, 87 Or App 397, 742 P2d 675, *rev den* 304 Or 437 (1987). There we held that the claimant, who was president and 50 percent shareholder of the employer corporation, was not a "subject worker" because when the claimant moved to California the

---

[2] SAIF urges us to construe the term "incidental" under the statutory construction template of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). There is no need for us to reexamine the meaning of that term; for nearly two decades, we have consistently adhered to a single interpretation of ORS 656.126(1). *Berkey*, 129 Or App at 498; *Northwest Greentree, Inc. v. Cervantes-Ochoa*, 113 Or App 186, 189-90, 830 P2d 627 (1992); *Power Master II*, 109 Or App at 300-01; *Power Master, Inc. v. Blanchard*, 103 Or App 467, 471, 798 P2d 691 (1990) (*Power Master I*); *Phelan v. H.S.C. Logging, Inc.*, 84 Or App 632, 634-35, 735 P2d 22, *rev den* 303 Or 590 (1987); *Langston v. K-Mart*, 56 Or App 709, 711-12, 642 P2d 1205, *rev den* 293 Or 235 (1982); *Jackson v. Tillamook Growers Co-op*, 39 Or App 247, 250, 592 P2d 235 (1979); *Kolar v. B & C Contractors*, 36 Or App 65, 69-70, 583 P2d 562 (1978).

employer moved with him. 87 Or App at 400. After the move, the corporation's headquarters were in the claimant's California home, the company paid payroll taxes to California, the former Portland site was effectively inactive, and the corporation's contacts in Oregon were limited to the claimant's trips to negotiate future projects and consult with accountants, lawyers and financial institutions. *Id.* The similarity of facts here, SAIF contends, compels a similar conclusion.

■ However, as we noted in *Hobson*, the key inquiry under ORS 656.126(1) is "the extent to which the claimant's work outside the state is temporary." 87 Or App at 400.[3] To determine whether a worker has temporarily left Oregon incidental to Oregon employment, we apply the "permanent employment relation test." *Berkey*, 129 Or App at 498 (1994); *Northwest Greentree*, 113 Or App at 189; *Power Master II*, 109 Or App at 299.

■ In *Hobson*, we concluded that the claimant had not left Oregon temporarily, primarily because the employer itself had moved its operations out of state. 87 Or App at 400. However, under the "permanent employment relation test," no single factor is dispositive; rather, all circumstances are relevant. Those circumstances include the employer's intent, the employee's understanding, the location of the employer and its facilities, the circumstances surrounding the employee's work assignment, state laws and regulation to which the employer is otherwise subject and the residence of the employees. *Berkey*, 129 Or App at 498 (1994); *Northwest Greentree*, 113 Or App at 189-90; *Power Master II*, 109 Or App at 300; *Phelan*, 84 Or App at 635. Unlike *Hobson*, there are other factors here, apart from employer's apparent movement of its operations out of state, supporting the board's determination that decedent was a subject worker.

The board found that it was employer's intent, at the time of decedent's death, to remain in Montana only temporarily. That finding is supported by substantial evidence in the record. In applying for the "Extraterritorial Certificate of Insurance," employer informed SAIF that it was taking its

---

[3] *See also Northwest Greentree*, 113 Or App at 189; *Power Master I*, 103 Or App at 471; *Phelan*, 84 Or App at 635; *Langston*, 56 Or App at 711; *Jackson*, 39 Or App at 250; *Kolar*, 36 Or App at 69-70.

employees to Montana temporarily. It left some of its equipment in Oregon, and after the move maintained, in Oregon, a bank account, an accountant, a lawyer, a business address, a telephone, automobile insurance and supplier accounts. While in Montana, employer continued to identify itself to SAIF as an Oregon employer and continued to pay SAIF insurance premiums. It was only *after* decedent's death, when a son of employer's president died, that employer decided to remain in Montana. There was apparently no similar evidence of employer intent in *Hobson*.[4]

The record also contains evidence from which a reasonable person could conclude that decedent understood his stay in Montana to be temporary. Decedent was hired by employer in 1989 and was working for employer in Oregon in the months before the March 1992 move to Montana. After moving, decedent retained his Oregon driver's license and automobile insurance. The board could properly interpret decedent's letter to his girlfriend as expressing an intent to stay with employer, *unless* his girlfriend decided to move to Montana, in which case decedent would have stayed in Montana for "a few months or years." Because employer at that time intended to return to Oregon, and decedent intended to remain with employer, we conclude that decedent understood his stay in Montana to be temporary.

The fact that employer moved much of its equipment to Montana does not compel the conclusion that its facilities were "located" there. The record supports the inference that it is the nature of a small logging operation to move the bulk of the equipment to the logging site. Simply because the logging *job* is out of state does not mean that employer has moved its *facilities* out of state. This is especially true considering that employer left some equipment in Oregon, continued to buy supplies from Oregon companies and maintained the vestiges of a business here, including a bank account, business address, and telephone. Unlike in *Hobson*, where

---

[4] The employer in *Hobson* also claimed that it intended to return to Oregon, but we found that argument unpersuasive in the light of evidence indicating a permanent move. 87 Or App 400. Unlike *Hobson*, the evidence here supported employer's claim that it intended to return to Oregon.

the corporation's headquarters were in the claimant's California home, the record here indicates that the employer's headquarters remained in Oregon.

We find no significant evidence in the record as to the circumstances surrounding decedent's Montana work assignment, other than the inference that a logging job requires employees to live at or near the site. Simply because decedent moved to Montana for a single logging contract, and intended to remain for another possible job, does not mean his move was permanent.

Furthermore, although employer withheld neither Oregon nor Montana income tax from his employee's paychecks, it sent payroll reports and paid premiums to SAIF, not to a Montana workers' compensation insurer, raising the inference that employer remained subject to Oregon laws and regulations.

Finally, although the employees lived in Montana during the operation, they lived in rental housing, and decedent lived in a trailer parked nearby. As noted above, due to the nature of a logging operation, where the employees resided does not necessarily indicate whether the move was permanent or temporary.

We find substantial evidence in the record supporting the board's conclusion that decedent was working temporarily out of state at the time of his work-related fatality. Although there is some evidence to the contrary, viewed as a whole, the record permits a reasonable person to reach the board's conclusion. ORS 183.482(8)(c).

Affirmed.